confesses and attempts to avoid the plea of the statute of limitations, by showing that the plaintiff instituted suits in the name of the defendants, (without any objection by them,) against the managers, whereby the three years were expended, when the defendants, by virtue of their authority as legal plaintiffs, dismissed the suits. This is certainly no legal bar to the operation of the act of limitations. The supreme court of the United States, in the case of Corporation of Washington v. Young, 10 Wheat. [23 U. S.] 406, upon the same ticket No. 1037, decided that the holders of the ticket had no right to use the name of the corporation, and sue upon the managers' bond, without the consent of the corporation, and that no consent appeared to be given in that case; and it was upon the return of that cause to this court, by mandate, after having reversed the judgment and set aside all the pleadings up to the declaration that the plaintiffs in that cause (the now defendants) caused the suits to be dismissed as mentioned in the replication. The replication, therefore, cannot be maintained.

The pleas are good: but the first three counts of the declaration are not sufficient to support the action, because they do not state of whom the one fourth of the ticket was purchased; and because the defendants are not liable for a quarter ticket, suing alone; the only obligation of the corporation being upon the contract contained in the whole ticket, signed by their managers, as was decided in this court, in Shankland v. Washington [Case No. 12,703], at May term, 1828. The fourth count, however, for money had and received, is a good count, and, therefore, the judgment upon the demurrer cannot be for the defendant, although the first three counts are insufficient, because the plaintiff's special demurrer to the defendant's rejoinder, is special as to that rejoinder only, but operates as a general demurrer to the whole declaration; and upon a general demurrer to the whole declaration, if there be one good count, the demurrer must be overruled. But the plaintiff's replication to the second and third pleas, being insufficient to support his action, the judgment upon this demurrer must be for the defendants.

It was stated by the plaintiff's counsel, in the course of the argument in this cause, that it was the wish of the parties, that the court should decide the merits of the case upon this demurrer; and that they would ask leave to amend the declaration if the court should be of opinion that, by any such amendment as could be made consistently with the facts which appeared on the trial of the former cases, namely, Washington v. Young [Case No. 17,241]; Clark v. Washington [Id. 2,839]; and Shankland v. Washington [supra],—the plaintiff would be entitled to recover. The court has looked into those cases, and finds that although Davis, who sold to the plaintiff this quarter of a ticket, and Gillespie, who sold the ticket to Clark, must, under the decision of the supreme court in Clark's case, be considered as the agents of the corporation for the sale of tickets, yet, that they had no right to sell less than a whole ticket, or to sell a fractional part of a ticket, so as to multiply the causes of action against the corporation at their pleasure. In the plaintiff's printed statement of the case for the supreme court in the case of Corporation of Washington v. Young [supra], it is said that the original ticket, No. 1037, was never in the possession of the parties for whose use the suit was brought; but was retained by Gideon Davis, who sold four quarters of the said ticket, each quarter being in the terms following: "By authority of congress, $30,000 highest prize, quarter of No. 1037, in the lottery for building Lancastrian school-houses, a penitentiary, and city hall, in Washington city, payable sixty days after the completion of the drawing. Gideon Davis, 4th." And it is stated "that the said Gideon Davis, since the completion of the drawing of the said lottery, and before the bringing of this suit, delivered to the said managers the said original ticket, No. 1037, towards the securing and paying of the money stipulated to be paid by him, under the contract recited and set forth in the said condition," that is, of Davis's bond to the managers. The ticket had been sold and delivered by the managers to the said Davis, under that contract. It will be perceived that the certificate given by Davis for the quarter of the ticket, appears to be his own individual act. It does not name the managers, nor allude, in any manner, to the authority or responsibility of the corporation of Washington. We think, therefore, that it must be considered as his personal engagement only, and that it cannot, in any manner, bind the corporation. The judgment upon this demurrer must, therefore, be for the defendants.

---

## Case No. 8,736.

### McCULLOCH v. DEBUTTS.

#### [1 Cranch, C. C. 285.] [1]

Circuit Court, District of Columbia. March, 1806.

##### PRACTICE AT LAW—CONTINUANCE—COSTS.

When the writ of inquiry is set aside by the defendant, the plaintiff may have the cause continued at the defendant's costs.

Mr. Youngs, for defendant, set aside the office judgment, and pleaded not guilty.

E. J. Lee, for plaintiff, elected a continuance, and said it was the practice in such cases that the continuance should be at the costs of the defendant, although the defendant offered ready.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

THE COURT inquired of the clerk, who said such was the practice.

Continued, at the costs of the defendant.

---

McCULLOCH (DEBUTTS v.). See Case No. 3,718.

---

## Case No. 8,737.

### M'CULLOCH v. GIRARD.

[4 Wash. C. C. 289.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1822.

CONTRACTS — WRITTEN INSTRUMENT — WHETHER WHOLE OR PART OF CONTRACT—PAROL EVIDENCE TO VARY—STATUTE OF FRAUDS.

1. Explanation of the rule that parol evidence shall not be given to explain or vary the written contract.

2. The question is, is this written instrument the contract, or merely a part performance of the parol agreement. It has elsewhere been decided, that in cases not within the statute of frauds, evidence may be given to contradict a written simple contract, by showing that the whole of it was not reduced to writing. It may be well doubted, nevertheless, whether the safest rule is not to apply the policy and reason of the statute of frauds to all cases of written contracts.

[Cited in Astor v. Girard, Case No. 595; The Alida, Id. 200; Page v. Sheffield, Id. 10,667.]
[Cited in Barker v. Bradley, 42 N. Y. 320.]

This was an action to recover the quarter interest payable the 1st of October, 1816, on $125,000, six per cent. funded stock of the [Bank of the] United States, with interest from the 2d of October, 1816, when it was received by the defendant. The declaration contained two counts, one upon a special agreement, which was fully proved by Mr. Jones, and the other for money had and received to plaintiff's use.

Mr. Jones, who was one of the five commissioners for receiving subscriptions to the Bank of the United States in Philadelphia, was examined as a witness, who stated, that he, after the 20th of July, 1816 (when, as it afterwards appeared by a return of the commissioners from other parts of the United States, that the twenty-eight millions to be subscribed by individuals had not been taken, by about thirty thousand shares), was authorized by sundry persons to subscribe for them to the amount of about ten thousand shares, including the plaintiff; for whom, and his associates, he was to subscribe for five thousand shares, being furnished by the plaintiff with the specie and certificates, accompanied by a power of attorney, to pay the first instalment. The specie part, $25,000, he deposited in the bank of the defendant. The power of attorney was to himself, to transfer the stock, $125,000, to the commissioners. That after divers conversations

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

with the defendant, a verbal agreement was entered into between the defendant and the witness, as the agent of the plaintiff and others, previous to the 27th of August, 1816, on which day a final arrangement was made in writing, and which was given in execution of the agreement. The paper alluded to was as follows: "For value received, I promise to transfer to J. W. M'Culloch or order five thousand shares of the Bank of the United States, on which the first instalment has been paid, as soon as the books for that purpose shall be opened by the said bank." Signed by the defendant. The whole of this paper is printed, except the date, the name of the person to whom the transfer was to be made, the number of shares and the signature.

The counsel for the defendant objected to any evidence being given by the witness of a parol agreement with the defendant variant from the above instrument, which they contended was the final agreement between the parties. They cited 1 Phil. Ev 494, 496; 3 Camp. 426; [Grant v. Naylor] 4 Cranch [8 U. S.] 229; 12 East, 6; 3 Wils. 275; 4 Brown, Ch. 515.

On the other side, it was contended that the paper of the 27th of August was not the agreement, but was merely intended as a part performance of the parol agreement, so far as it could be performed, until the books of the bank should be opened for making transfers.

Chauncey & Sergeant, for plaintiff.
Mr. Binney and J. R. Ingersoll, for defendant.

WASHINGTON, Circuit Justice. We admit the general rule of law, that parol evidence to vary or explain a written contract, except in the case of a latent ambiguity, is inadmissible. But the question is, whether the paper which has been given in evidence be the contract between these parties, or was given merely as a certificate of the number of shares to which the plaintiff was entitled under the parol contract, and in part performance of that agreement, so far as it could be performed before the bank was organized, and had opened its books for transfers? The court is of opinion, in the present stage of the cause, that the instrument under consideration was given for the purpose of executing the parol agreement as far as it could then be executed; and that if it should turn not that it formed a part of that agreement, that such a paper should be given, or that a paper of that description was, in the ordinary course of the defendant's business, in respect to transactions of this nature, given by him; evidence of the parol contract will be proper, and will not violate any of the rules of law upon this subject.

The witness then proceeded to state that, having ascertained in his conversations with the defendant that he intended to take the